Good morning once again. Leslie Hurst. I'm counsel for plaintiff and appellant James Kroessler. I'd like to reserve four minutes for rebuttal. There's two issues on appeal. The first issue is whether the standard for proving false labeling of a dietary supplement under state law differs from the Food, Drug, and Cosmetic Act. And the answer is clearly no, it's the same standard. Under both, whether advertising is true or false is determined by weighing the totality of the competent and reliable scientific evidence. The district court used the wrong federal standard and so wrongly concluded that Mr. Kroessler's state law causes of action and in fact all state false advertising causes of action are preempted as a matter of law. The standard used by the district court is that a structure function claim, a dietary supplement structure function claim is established as true if there is any evidence at all, if the defendant has any or the company has any evidence at all that the product is effective as advertised without needing to consider contradictory studies finding in this case that glucosamine does not work and without needing to weigh or consider the totality of the evidence, the evidence presented by the plaintiff. That is the wrong standard. According to the FDA and according to the FTC and the guidelines that were submitted with our request for judicial notice, whether glucosamine works as advertised is determined by weighing the totality of the scientific evidence, all of the is not enough and everyone agrees when I say everyone, plaintiff, defendant CVS and the amicus CRN all either agree or do not dispute that the standard used for determining whether an advertising claim is true or false under the FDCA is a totality of the competent reliable scientific evidence. Everyone agrees or does not dispute that that is not the standard used by the district court and everyone agrees or does not dispute that the standard in the FDCA is the same as used in courts of law. So, Mr. Hirst, do you really think that the district court was weighing the evidence? I know you make this argument a great length and I see it in the district court's opinion where you draw that, but of course, Ms. Kressler's evidence was not even in the record because of the stage of the proceeding, so the court, do you think the court was really saying that any proof is sufficient that they were doing it on a weight of the standard issue or are they making a decision on a different basis with respect to a straight up preemption argument because the FDCA had already approved this structure function claim? The court, I agree with you, definitely did not weigh the evidence. It was on the pleadings. The court acknowledged that in the pleadings, Mr. Kressler alleged studies showing that the structure function claims were false. She said, I don't need to look at that evidence because under the standard used by the FDCA, unless defendant has no evidence in their favor, the claim is substantiated as true. It's proven as true. So, the court pointed to a different evidentiary standard under the FDCA versus state law and that is preemption. She found well, first of all, the FDA or FTC never approved these claims as structure function claims. With a dietary supplement, that's the point of the statute of the FDCA. Did the district court recognize that, do you think? That at the end of the process, these claims hadn't actually been approved but merely the statements were filed with the FDCA? Is that a distinction you think the district court realized? I do, yes. I do. Because it wasn't that she thought they were approved. It's that she thought there was a different standard approved for ultimately determining whether the claims are true or false. I do think she recognized that under the FDCA for a structure function claim, there's not a prior approval process. There's a process where the advertiser tells the FDCA that they're going to make these claims. They're supposed to have already reviewed all the totality of the evidence and have evidence based upon the weight of the evidence know they're true and then have certain disclaimers. The FDA only will come back in and determine whether that's true or false if they decide to challenge the claims. Ms. Church, could you explain to me for difference in the standard approved under the FDCA and under California law in this area? The significance is, for preemption, if there's no difference between a state law evidentiary proof and the FDCA standard, then there is no preemption. The preemption statute says, or preemption provisions say, unless there's a difference, unless state law imposes additional or different requirements, state law is not preempted. It's not a safe harbor provision as defendants tend to argue. It's not if they comply with a statute, state law claims are barred or prohibited. The preemption statute says unless state law is different, there's no preemption. Of course there's not, because the FDCA recognizes and encourages state law. On this particular point, is state law different? No, it is not different. State law, as we showed in our opening and reply, they are the standard for proving whether a disputed fact is true or false. Here, disputed fact is, does glucosamine work as advertised? Is it effective for joint mobility, etc., as advertised? In deciding whether disputed fact is true or false, state law uses the same standard, the FDCA, and that standard is, you weigh the totality of the evidence presented. You weigh the totality of the admissible scientific evidence. That's the exact same standard used by the FDA and FDCA. I can't remember who it was, either the district court or CVS argues that under California law, you can't force the defendant to come forward with evidence. As I understand California law, it's just nothing more than who has the burden of production. That's correct. That's why that argument, lack of substantiation argument, is distracted, and it's unfortunate just the same words, substantiation, are used, but a lack of substantiation case is not ours. A lack of substantiation case is when the plaintiff comes into court and says, I don't have to prove that the advertising claim is false. I don't have to produce studies. Defendant has to come forward and prove the claim is true, and that's not this case. Even on the pleadings, you can see that we have a lot of evidence showing that the structure function claims are false. When it comes time, we're going to present that evidence and additional evidence, and we're going to prove they're false. This is not a lack of substantiation case. We're not trying to shift the burden to defendants and say you have to prove your claim is true. CVS alleges that the evidence you proffered, although it was of course never in the record, goes to these claims and not to structure function claims, relying on, I think, the titles of those studies that you referenced in your briefing. Again, the court didn't consider them. Do you differ with that? Do you think those went to the actual allegations of the claims that the manufacturer made on the label? Yes, we do, and we think we have easily those studies. As you noted, the court didn't base her ruling on that point. The court did not examine the studies. She couldn't. The studies aren't in the record. I think the court accepted our allegations that these studies show that the structure function claims are false, that those allegations were plausible, and that now was not the time on the pleadings to resolve those questions. Instead, she ruled as a matter of law that the standard of the FTCA for proving truth or falsity is different than state law, and that is not the case. When you look at the FTCA and FTC guidelines, which I believe the court did not consider the court below, the standard is the same. You weigh the totality of the evidence. Let me ask you this. When I read the complaint, I saw the complaint lays out all the studies that I guess were available at the time and sort of makes allegations with respect to all of these various studies and different types of studies and whatnot, but I kind of thought that what she was saying is that it's not entirely clear whether this is a disease claim or a structure function claim. I believe what the court said, you look at her order. It's really the last two pages. First, she says these are not disease claims. These are structure function claims, and that's our second issue of error, but she first separates out these are not disease claims. So, she's looking only at structure function claims. She says, as to the structure function claims, are those preempted? She said, yes, because the standard of proving falsity under state law is different than federal law. So, that is the error, but I think she's clearly focusing there on the structure function claims, but acknowledging that we do have evidence. We do have allegations that those structure function claims are false. I'm running out of time. I would like to just briefly mention our second... Yeah, I'll give you time for a rebuttal. Don't worry. The second issue on appeal is that, as to her ruling that we do not make disease claims, that there are not implied disease claims, we think she erred in not giving us an opportunity to amend the complaint to add additional allegations of fact that these can be and have been read as implied disease claims. It is a question of fact, and courts and regulators, in making that factual determination, look to manufacturer's intent. They look to how consumers actually read the advertising. For instance, CVS posts on their website testimonials from consumers saying they used this product for arthritis and arthritis pain. So, we would like an opportunity. It was the complaint to add those additional allegations. I'd like to, if there's not... I can't remember, but did you ask the district court for leave to amend in your papers? Yes, we did. Yes, we did. She did deny it, and there was no oral argument or other opportunity to raise that. Yes. Okay. All right. We'll hear from CVS. Good morning, Your Honors. Jean-Claude Andre on behalf of CVS. I'd like to start with the labeling that is at issue in this case, because I think that once the labeling is properly categorized, it drives how this court needs to resolve both issues before the court. That is both the dismissal issue and the leave to amend issue. The FDCA is super clear that a manufacturer may make structure function claims defined as claims that describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, or characterizing the documented mechanism by which a nutrient or dietary ingredient acts to maintain a structure or function. What that means is that a manufacturer can advertise on its labeling, and that includes the bottle, the box, signage, other kinds of consumer-facing advertising. A manufacturer may advertise that its product provides such general supportive properties for a structure or function of the body. The FDA, in interpreting the statutory language, has said that terms like strengthen, reduce, improve, modify, inhibit, protect, and defend are all permissible structure function terms, so long as the terms do not suggest disease treatment or prevention. But it's the law that whatever the manufacturer puts on its label is determining this to those issues. Is there not room for a plan of two legs and notwithstanding the language on the label, there are implicit claims otherwise, or is it your argument that the courts are bound by what the manufacturer puts on the label and can't look beyond that? The courts are not bound by what is on the label, but the courts are bound by what is on the labeling. I don't understand that distinction. Sure, let me explain if I could. The labeling is any kind of consumer-facing marketing. I mentioned signage a minute ago. You have the CVS Glucosamine bottle. It's in a box. Both the label and the box are fair game. Let's say that that box is on an end cap at your CVS store, and that end cap has signage. What's on that signage is fair game. Let's say CVS runs an advertisement in a publication, and it says something different on that publication than what is on the label itself. That advertising is fair game. To point to one thing that Plaintiff has actually invoked here, the picture of the two elderly people smiling, walking happily on the beach, images are also fair game if they're on the labeling. Again, any kind of consumer-facing advertising. What the FDA, what the statute labeling, and then determines whether notwithstanding the precise words used, the labeling somehow implies disease treatment. When does the FDA look at that and make that determination? Not initially, because they make no preliminary determination that a supplement only makes structure function claims. It's merely a registration in essence with it, isn't it? Doesn't that determination only occur when challenged? Doesn't the fact that there's challenge allowed mean that they're not bound by the bold statements on the labeling? Well, you're correct that the FDA no longer, and this is post-Dichet, the Dietary Supplement Health and Education Act of 1994. Post-Dichet, the FDA no longer has to pre-approve the claims on dietary supplements. But in this case, these label claims or the labeling, some total labeling, is as clean as vanilla, as FDCA-compliant as any labeling could be. Because it not only uses, well, it uses the safest of the terms that the FDA in the Federal Register has told us that we can use. It uses the terms support, safe, and clean. And so, if the FDA doesn't approve that, it merely receives a registration, does that mean that a supplement manufacturer could put anything on the label that uses all those safe terms without regard to other issues, and therefore, inoculate itself from any challenge? Because that's, in essence, what the denial of the motion to amend the complaint, or the decision to deny the amendment of the complaint, concludes that, well, the labeling language is clear, so no challenge could possibly be successful, and therefore, the motion to amend was denied. Well, I guess if I could respond to both parts of that question. First of all, even though the FDA doesn't pre-approve the label claims, manufacturers, before they give the FDA notice as to what they want to put on their labels, they look at, and this is what CVS did here, they look at the Federal Register document that we've cited, 65 Fed Reg 1000. It's a 60-page document, and it has example after example of what kinds of claims are structure function claims, what kinds of claims are disease or and those are the guideposts. On top of that, once the notification goes into the FDA, the FDA can respond, and in fact, this court has before it in the excerpts of record, I believe it's around pages 68 to 78, there's some warning letters, courtesy letters from the FDA back to the manufacturers regarding certain claims. Once the FDA responds and says, oh, some of these claims are problematic, don't make them, and then doesn't address others, that all does create, contrary to what Mr. said, effectively a safe harbor for the manufacturer. And so we do think that this is a safe harbor regime. I mean, for them to make a structure function claim, they have to have substantiation that the statements are in fact truthful and not misleading. So what I understand you to be saying is that if they use the correct words and make a structure function claim, then no one can challenge them. There can be no lawsuit. No, that's not true. So to get to how a plaintiff could challenge a proper structure function claim, the key is that the defendant has to come into court with science in hand. And that would include at the pleading stage, the plaintiff has to plead that he or she has science that refutes the precise claims made on labels. So this is why at the outset I said that it's important to properly categorize these claims as either structure function claims or implied disease claims, because if they are true structure function claims, and again, they are, they are as clean and as FDA compliant, FDCA compliant as any claims could be. If they are proper structure function claims, then the plaintiff has to walk in and say, I have science to prove that those structure function claims are false. And was that what Mr. Chrisler did? Didn't he allege that the studies that are cited in his complaint, but of course not in the record, challenged the effectiveness of glucosamine for supporting joint health? Wasn't that what was in the complaint in this case? I would say he tried and he failed, and it's not just because the district court found as much. He tried and he failed because his science was a mismatch to the actual claims made. And this goes back to my point. But he alleges in his complaint that his studies actually focus not just on disease, but on joint health. So I know that CVS makes a big mismatch argument here, trying to fit this case within the structure of the doctor case, but doesn't he allege his studies address health issues and not just disease issues? The title of the study is notwithstanding. Doesn't the complaint allege that it matches the claims on the label? Well, I think under Dackauer and then also under the California Court of Appeals decision in King Biopharmaceuticals, which Dackauer relied on, our district court relied on and we invoked. And then also because this is a 9B case, plaintiff can't just say I've got studies that also establish that CVS glucosamine doesn't stop pain, but also just doesn't support general joint health. He has to explain how those studies support his challenge to the label claims. And I guess one way to look at it is that plaintiff has effectively pleaded himself into preemption because even beyond the titles of the studies, his own descriptions of the studies make clear that they are not appropriate studies for challenging the general health maintenance and support claims on CVS's labels. So to give you an example, an appropriate study that would not be a mismatch in this context would be a long-term study with a lot of individuals, a control group, and a test group. And that study would measure the overall health and level of plaintiff's own descriptions of his studies. And then on top of that, look at the titles. It's clear that those studies are not studying exclusively healthy individuals and conducting the proper inquiry. In fact, the one study that seemingly comes the closest as far as having the right kind of population, that's the Tenet study, studied the effects of MSM, which is a chemical that's not even in the product at issue here. How can you make these decisions on a motion under 12b-6? I don't understand that given what you just said. Well, because if the plaintiff has the burden to allege what you're saying is that's a legal, what they have to, you just elevated that study to a legal requirement. And if they don't have that kind of study that you just articulated, they don't have a claim. That's correct. Where does that come from? Where's the legal basis for that? How can you say as a matter of law? Well, the legal basis... They don't have that kind of study, and therefore they can't make a structure function claim. The basis for the thing... They make out, they make the test under 12b-6, is there a plausible claim in light of their allegations? And you even acknowledge they come, in your estimation, they come close with one of their studies. I don't know why that doesn't get them over 12b-6 and on to summary judgment, where you can debate whether or not the studies are adequate. Or alternatively, why that doesn't give them leave to amend, as they requested this report, to introduce more arguments or evidence that they think would meet that standard that Judge Feist is discussing. So, first to address Judge Feist's question, I'll come back to you, Judge Mellgren, if I may. Preemption is a threshold legal question. Again, Dachauer says as much. It's like other issues of judicial traffic control that have to be resolved as quickly as it can. And I realize... Dachauer wasn't a Rule 12 case, was it? No, it wasn't. But it still informs the preemption analysis when preemption is raised, whether at 12b-6 or at Rule 56. There's no question that preemption itself is a legal question, but there are predicate facts on which you make that legal conclusion. Absolutely. And that's what we're talking about. Right. And so when you look at... I mean, if Dachauer says that in order to go to trial, you have to have studies that match the label claims, it logically flows from that, that at the pleading stage, you have to plead that you have studies that actually challenge the label claims. If Dachauer doesn't do enough lifting on its own, you can look further back up the chain to King Biopharmaceuticals, where the California Court of Appeal interpreting the very statutes at issue here was very clear that the plaintiff has to come in with science that actually attacks the label claims. And he has to do so because if he doesn't, it turns this case into an impermissible lack of substantiation case that would put too much of a burden on the manufacturer and result in this, not my words, the California Court of Appeal's words, undue harassment that the federal government with DeShay and the FDCA didn't countenance, and that the California legislature and California courts aren't going to countenance either. And then on top of that, this is a falsity case subject to Rule 9b. So when you add those three things together, Dachauer's logic, King Bio is holding an plaintiff has to come in and allege, I have studies that challenge the label claims actually made, here they are. And if plaintiff had actually cited even just one study that was sufficient and match the label claims, then we would be moving on. But all four of his studies are mismatched because as I explained earlier, and the court wants to look, we have a nice little chart on pages ER 20 and 21, which is our reflibrate. All the states are mismatched. Three of them clearly don't have the right populations. And the fourth study is the wrong ingredient. Maybe you had a question judged by us. Sure. So as far as Ms. Hurst's point that California and federal law are the same, and this may be implicit in what I've been saying here, it is a safe harbor regime that we are operating under. Meaning if the manufacturer complies with the federal standard, then a plaintiff suit seeking to use evidence that goes beyond what the federal requirement requires is imposing a standard not identical to the federal standard. And to the extent that the court wants a textual hook for that, it's that the preemption provision says that state law that directly or implicitly an additional requirement is preempted. And it's that implicit part that if the plaintiff is essentially using evidence that the FDA would not consider, then their claims are preempted. Well, with that respect, what the plaintiff is trying to do is that your position that California law is at variance with federal law and therefore preemption was appropriately invoked with the district court? I can answer that with yes and no. I mean, as applied in this case, whereas plaintiff seeks to apply it, California law would be inconsistent with federal law. I mean, on its face, when you match up the applicable statutes or the elements of the causes of action, there's not an inconsistency. But what plaintiff is seeking to do is to impose liability using evidence and applying a standard or an application of California law that is more demanding and is inconsistent with the federal standard. I see I'm about out of time, but I want to get back to your question if I could, Judge Mulligan, about leave to amend. The reason why the denial of leave to amend was absolutely proper here, part of it is that plaintiff studies are a mismatch and that plaintiff has never proffered despite four opportunities to do so that he can come forward with the kind of appropriate study that I mentioned. Our briefing has been consistent in this case. We laid out in our motion dismiss exactly the argument that I'm making here today. We said you need a study that matches. Your studies don't match. Plaintiff opposed, but he never came back and said, oh, well, if dismissal is granted, please give me leave to amend because I will go out and get such a study that matches. No, instead, in his opposition, he's had one sentence throwaway that said, if any part of my complaint is dismissed, please give me leave to amend. Then on appeal, notwithstanding the district court's dismissal order in the opening brief, plaintiff yet again does not proffer that he can come forward with an appropriate study, reply brief the same, and today at oral argument the same. Instead, what plaintiff has proffered that he wants to provide with an amended complaint are things that are legally irrelevant under the FDCA. He wants consumer studies. He wants, and it's unclear, but PMK depositions of CVS officials to figure out what the marketing plan was or what their intent was. The FDA has been clear that you look at, and this goes back to our discussion at the beginning of this argument, the FDA has been clear. You look at the label and labeling alone in deciding whether to categorize a claim as a structure function claim or a disease claim. This is directly in the FDA guidance from 2002, that's exhibit four, to plaintiff's compendium of judicial notice documents right there, I believe on page two or three or four. Well, that's true at registration, but not determinative of the challenge though, is it? It is, because basically in order for plaintiff to, again, not be implicitly trying to impose a requirement that's different from the federal standards, he basically has to stand in the shoes of the FDA, and so if the FDA says we're just going to look at the label and labeling, then the plaintiff isn't entitled to look at things that go beyond the label and labeling. That would be inconsistent with the federal requirements and therefore preempted. So long with a way of trying, about me trying to say that Lieffelman would be futile because he's never proffered that he can on an amended complaint come forward with the actual evidence he would need to move forward to the totality of the evidence weighing phase, and what he has proffered is legally irrelevant under the FDCA and the FDA standards. Thank you for the extra time. That's right. Thank you, counsel. We'll put two additional minutes on counsel's rebuttal. Okay. Thank you. I'm going to start with where my opponent left off, which is we should not get leave to amend to allege facts supporting the disease claim because whether a claim is a function claim or disease claim, you determine that only by looking at the labeling. Well, that's not true. It can almost inherently not be true in an implied claim because it's implied because it's not explicit on the label. I'd like to quickly, the FDA says the same. The FDA, and I'm quoting from 65FR at page 1006, the FDA in making a determination as to whether something is a structure function claim or disease claim, quote, will rely on evidence outside the labeling to establish, for instance, intended use, including, again, quoting consumer use of a product for a particular purpose. Would your request to amend primarily to allow you to leave to amend for the structure function claims, in spite of what my opponent says, we allege that the structure function claims are false? Apparently the district court didn't agree. The district court not only denied your leave to amend, which as you've indicated was to expand into implicit disease claims, but the district court, by dismissing, apparently did not agree that you had alleged sufficient scientific evidence to rebut the structure function claims that were on the label. And Mr. Andre argued that the scientific studies that you referenced in the district court did not match the claims that were made on the label. So I'd like to hear your response to that. Yes, that is defendant's argument. That's not what the court ruled. What the court ruled is that in spite of the studies alleged by Mr. Crossler, there's a different standard of proof under the federal law versus the state law. That's why she said as a matter of law, amendment to the allegations aren't going to fix this, because it's not a pleading sufficiency problem. It's not that I need to allow them an additional time to allege studies that I find here don't match. She never got to a matching issue. So you think the district court bought CVS's attempt to say that this case is just like Dockhower, where there's a mismatch of studies? That's exactly right. She did not decide on sufficiency of pleadings, couldn't. The studies weren't in front of her. What was in front of her were our allegations and our reference to studies. And in fact, I'd like to actually point the court to its decision in the Dunford case. That's 907 F3, 595. And this is a preemption case. And the court says plaintiffs generally are not expected to provide evidence at the pleading stage. We went above and beyond that, and we did allege evidence. But the court did not make its ruling or its determination based on a mismatch of evidence. The court's ruling was based upon a different federal and state standard. And I don't hear defendants, and I don't hear amicus saying that the standards are different. The standards are the same. You get it truth by weighing the totality of scientific evidence. And let me briefly talk about King-Bio, this lack of substantiation case. Again, the King-Bio case was a case where a plaintiff went to trial with no evidence. On appeal, the plaintiff argued, we shouldn't have to present evidence in a false advertising case. The law should be that that burden is shifted to defendant. Well, the court said no. The law is, burden of production and the burden of proof. We agree with that, which is why we have alleged studies showing the claims are false. And when the time comes, we're going to put forward those studies and other evidence, and we're going to prove they're false. Okay. Thank you, counsel. Thank you very much. We appreciate your arguments this morning, counsel. The matter is submitted at this time. And that ends our session for today.
judges: Paez, Melgren, Bade